### THE CHARLES J. SENFF.

(Circuit Court of Appeals, Second Circuit. May 8, 1911.)

#### No. 267.

COLLISION (§ 95*)—STEAM TUGS CROSSING—FAULT.

A tug, with a car float alongside, proceeding up the Hudson at night, *held* not in fault for a collision between her tow and a tug coming down on a crossing course from her starboard side, and which failed to hold her speed after the exchange of passing signals.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Owen J. McWilliams, as owner of the tug Zouave, against the tug Charles J. Senff; the Brooklyn Eastern District Terminal Company, claimant. Decree for claimant, and libelant appeals. Affirmed.

The suit was brought to recover damages for a collision between the libelant's steam tug Zouave and a car floated in tow of the steam tug, Charles H. Senff, which occurred in the North River on June 8, 1907, about 2 o'clock in the morning.

At the time of the collision the Zouave was proceeding down stream on the New Jersey side of the river and the Senff was proceeding up the river with a car float upon her port side projecting about 100 feet ahead of her. Those in charge of the Senff assert that when they first observed the Zouave they saw her red light on the starboard bow of the Senff about or less than 1,000 feet away; that immediately upon such light coming into view, the vessels exchanged signals of one whistle, and that soon afterwards the Senff stopped and reversed her engines.

Those in charge of the Zouave assert that they first saw the green light of the Senff on the Zouave's port bow when about a mile and a quarter away, and that the vessels then exchanged a one-whistle signal and afterwards exchanged another similar signal.

It appears that the Zouave failed to hold her speed and slowed down shortly before the collision. The port corner of the car float struck the port side of the Zouave inflicting damage. Both vessels appear to have blown alarm whistles.

The principal questions of fact upon the trial related to the courses of the vessels; the distance of the Zouave out in the river, and the distance between the vessels when first seen.

The District Judge who heard and saw the witnesses said that it was doubtful whether the Zouave was far out enough in the river when coming down to make the starboard hand rule applicable and that the cause seemed to be one for the rule of "special circumstances." But he further held that if the starboard hand rule were applicable, the Zouave failed to fulfill her

duty under it because she failed to hold her course and speed, and, consequently, he dismissed the libel.

De Lagnel Berier and James J. Macklin, for appellant.
Samuel Park and Carpenter & Park, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). Both alternatives in this case seem to lead to the same result. If the Senff were not the burdened vessel, it is not apparent how she was in fault. Stopping and reversing when the Zouave was seen was undoubtedly the proper way to obey the signals and avoid a collision, and the testimony does not warrant a finding that there was negligence in failing to see the Zouave sooner. If, on the other hand, the Senff were the burdened vessel, the same course was proper to keep out of the way of the Zouave. The latter as the privileged vessel was the one at fault because she reversed her engines and slowed down instead of holding her speed. We think the District Judge fully warranted in saying that "that slowing probably brought about the collision."

The libelant, however, contends that the Senff as the burdened vessel was at fault for unnecessarily misleading the Zouave. This contention is based upon the theory that the Senff should have seen the Zouave while quite a long distance away and, instead of holding her course and stopping, should have ported her helm and thus have indicated clearly her intention to avoid the Zouave. But with the car float alongside and projecting ahead and the vessels as near as we think the weight of testimony places them, we are by no means satisfied that this would have been the wisest course for the Senff to take to avoid a collision, and her failure to take it cannot be regarded as unnecessarily misleading the Zouave.

The libelant also contends that the stopping and backing of the Zouave was not a fault but an error in extremis. It is, of course, true as stated in The Oregon, 158 U. S. 186, 204, 15 Sup. Ct. 804, 812, 39 L. Ed. 943—from which the libelant quotes—that "when the master of a vessel is confronted with a sudden peril caused by the action of another vessel so that he is justified in believing that collision is inevitable," his error in the exercise of his best judgment will not be regarded as a fault. But we think there is nothing in the present case calling for the application of this principle. We perceive no sudden peril into which the master of the Zouave was led by the action of the Senff.

The decree of the District Court is affirmed with costs.